UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENISE FANNON,

      Plaintiff,

vs.

KOREX CORPORATION,
a Michigan corporation,
SANDY PENSLER, an individual, and
JASON ANDERSON, an individual,

      Defendants.

_____/

Teresa J. Gorman (P61001)
Teresa J. Gorman, PLLC
Attorney for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI 48098
Tel:    (248) 763-6943
Fax:   (248) 689-3268
terigorman@aol.com

_____/

## COMPLAINT

    Plaintiff, DENISE FANNON, by and through her attorney, TERESA J. GORMAN,

PLLC, states:

### JURISDICTION AND PARTIES

    1.    This suit is brought pursuant to the Americans With Disabilities Act of

1990, as amended, 42 USC §12111, et seq., Title VII of the Civil Rights Act of 1964, as

amended, 42 USC §2000e et seq., the Age in Discrimination in Employment Act of

1967, as amended, 29 USC §621, et seq., the Persons With Disabilities Civil Rights Act,

MCL §37.1201 et seq., the Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq., and

Michigan common law.

2.    This court has jurisdiction pursuant to 28 USC §1331 and 28 U.S.C. §1367(a).

3.    Plaintiff is a citizen of the United States and a resident of the City of Wolverine Lake, Oakland County, Michigan.

4.    Defendant Korex Corporation ("Korex") is a Michigan corporation which, during relevant times, was doing business in the City of Wixom, Oakland County, Michigan

5.    Defendant Sandy Pensler ("Pensler") is a citizen of the United States, resides in Southeast Michigan and is and was the owner of and employed by Korex.

6.    Defendant Jason Anderson ("Anderson") is a citizen of the United States, resides in Southeast Michigan and is and was employed by Korex as its General Manager.

7.    Plaintiff was Korex's employee within the meaning of the Americans With Disabilities Act of 1990, as amended, 42 USC §12111, et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e et seq., the Age in Discrimination in Employment Act of 1967, as amended, 29 USC §621, et seq., the Persons With Disabilities Civil Rights Act, MCL §37.1201 et seq., and the Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq.

8.    Korex meet all of the requirements for employer status under the Americans With Disabilities Act of 1990, as amended, 42 USC §12111, et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e et seq., the Age in Discrimination in Employment Act of 1967, as amended, 29 USC §621, et seq., the Persons With Disabilities Civil Rights Act, MCL §37.1201 et seq., and the Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq.

9.     The events giving rise to this cause of action occurred in Wixom, Michigan, in the Eastern District of Michigan.  Accordingly, venue lies in the United States District Court for the Eastern District of Michigan under 28 USC §1391(b).

10.    The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney fees.

## STATEMENT OF FACTS

11.    Plaintiff repeats and realleges paragraphs 1-10

12.    Plaintiff is a 57 year old female.

13.    In or around 2002, Plaintiff commenced her employment with Korex as the Human Resources Assistant reporting to Human Resources Supervisor.

14.    In or around 2012, Plaintiff was promoted to Human Resources Supervisor.  No one was hired to replace Plaintiff in the Human Resources Assistant position and Plaintiff performed all of the Human Resources department duties alone thereafter.

15.    During her employment with Korex, Plaintiff received positive evaluations, regular raises, and her personnel file is devoid of any record of any discipline or counseling.

16.    From 2012 to 2017, Plaintiff consistently asserted the rights of female employees and herself to work in an environment free from sexual harassment and gender discrimination.

17.    From 2012 to 2017, Plaintiff consistently asserted the rights of all employees and herself to work in a safe working environment.  She received numerous employee complaints about safety and other legal violations, participated in MIOSHA investigations, and regularly reported unlawful safety issues to Pensler.

18.     From 2012 to 2017, Plaintiff consistently refused Pensler's directives that she violate the law, fabricate documents, and lie to MIOSHA, the City of Wixom, public officials, customers, employees and others about the safety conditions in the workplace, the status of Korex's business license, the disposal of toxic waste, product quality, and discrimination and harassment in the Korex workplace.

19.     In early 2017, Defendants terminated the employment of the 67 year old General Manager.  Anderson, who is in his 40's, was then promoted from Purchasing Manager to General Manager and stated to Plaintiff (now his subordinate):  "You're the oldest person here now."

20.     In the spring of 2017, one of the myriad safety violations in Defendants' work environment included acid leaks from tanks outside of the office which compromised the air quality in the office and, in particular, Plaintiff's office space.

21.     Plaintiff complained that she was having difficulty breathing in the work environment and requested that she be allowed to work in a safer location.  Anderson rejected her request and directed her to continue working in the unlawfully toxic environment and to just wear a mask.

22.     On July 13, 2017, Plaintiff consulted with her physician because she was experiencing breathing difficulties.

23.     On July 15, 2017, Plaintiff, still suffering from breathing difficulties and chest and shoulder pain, was admitted to the hospital where it was determined that she was having a heart attack.

24.     Plaintiff underwent cardiac testing and surgery to implant a stent.

25.    That evening, Plaintiff's daughter transmitted a series of text messages to Anderson specifically informing him of Plaintiff's medical condition.

26.    Defendants were kept fully apprised of Plaintiff's medical condition.

27.    On July 18, 2017, Plaintiff was released from the hospital and placed on medical leave by her physician.

28.    Within days of Plaintiff's hospitalization, Defendants hired a personal friend of Anderson's as the HR Specialist to perform Plaintiff's job in her absence.

29.    From July 15 -22, 2017, Plaintiff used paid vacation time while on medical leave.

30.    On July 22, 2017, Plaintiff commenced a medical leave of absence pursuant to the Family Medical Leave Act.

31.    On July 28, 2017, Plaintiff provided Defendants with a note from her cardiologist excusing her from work until August 25, 2017 "due to illness and ongoing treatments."

32.    On July 28, 2017, Plaintiff transmitted a text message to Anderson requesting a meeting and advising "I am off until 8/25. I go back to the cardiologist that day for more tests and will see if I am released then."

33.    On August 2, 2017, per Plaintiff's request, Plaintiff and Anderson met.  At the meeting, Plaintiff requested an accommodation for her eventual return to work in the form of a job sharing with the new HR Specialist hired days after Plaintiff's hospitalization. Anderson agreed to the job sharing plan.

34.    Also at the meeting, Anderson told Plaintiff that when she returned to work, he was going to place a sign on her office door warning employees that all

conversations in her office would be tape-recorded as there was "just too much traffic" in and out of her Human Resources office and too many employee complaints being brought to management.

35.     On August 8, 2017, as she had done numerous times before, Plaintiff again complained of gender discrimination in the workplace and texted Anderson that she has received a complaint from a female employee that she has been subjected to unwelcome discriminatory commentary by a supervisor.  Plaintiff reiterated that this was not the first time the offending supervisor's conduct has been brought to management's attention.

36.     Defendants took no action against the offending supervisor.

37.     On August 21, 2017, Plaintiff provided another note from her cardiologist excusing her from work to an "unknown" return date.

38.     Defendants never contacted Plaintiff to participate in an interactive process with Plaintiff regarding her possible need for extended medical leave.

39.     On September 8, 2017, Plaintiff transmitted a text message to Anderson wherein she advised "Just got your message, I am in the hospital, not sure if I had a mini heart attack this morning, so hopefully I go home tomorrow."

40.     Plaintiff did not suffer another heart attack September 8, 2017 but, rather, suffered a Transient Ischemic Attack ("TIA") also known as a mini-stroke.

41.     Defendants were advised of the TIA diagnosis.

42.     On September 11, 2017, Plaintiff transmitted a text message to Anderson wherein she stated:  "I am home and feeling good, I go back to cardiologist on Friday late afternoon and find out when I can come back.  Hopefully soon."

43.     On September 15, 2017, Plaintiff transmitted a text message to Anderson wherein she stated: "Hi there, I am off for 2 more weeks and he will let me know then if I can come back. I go back 9/29." Anderson did not respond.

44.     On September 29, 2017, Plaintiff provided Defendants with a note from her cardiologist which read: "Please keep Mrs. Fannon off work until further notice so she can continue with medical treatment."

45.     Defendants did not respond to the September 29, 2017 request for extended medical leave nor did they engage in any interactive process.

46.     On October 2, 2017, Plaintiff transmitted a text message to Anderson wherein she stated: "Hi jase, so do you think you and I could sit down in the next week or so and go over things, ie. Sched., days/times, pay, job? I would like this all done before I come back."

47.     On October 3, 2017, Anderson replied to Plaintiff's October 2, 2017 text message with a text wherein he stated: "I will get back to you."

48.     As of October 3, 2017, Defendants still did not contact Plaintiff to engage in any interactive process regarding her need for accommodation of extended medical leave.

49.     On October 10, 2017, Plaintiff transmitted another text message to Anderson wherein she stated, in pertinent part: " ….. I have some decisions to make in my life and I would like to know where I stand with Korex."

50.     On October 10, 2017, Anderson transmitted a text message to Plaintiff wherein he stated: "Hey Denise, I really do not want to make any plans until you are fully released from your medical. …."

51.     On October 10, 2017, Plaintiff transmitted a follow up text message to Anderson wherein she stated, in pertinent part:  "…  I am released on Nov. 3rd and I need to know before than my options.  Like I said I have decisions to make before then so I need to know what/if anything Korex has for me. …"

52.     Plaintiff communicated her need for medical leave of absence of three (3) weeks in addition to the leave to which she was legally entitled under the Family Medical Leave Act.  Her FMLA leave expired on Friday, October 13, 2017.  Per her physician's directives, she requested that her leave be extended through Friday, November 3, 2017, with a return to work date of Monday, November 6, 2017.

53.     As of October 10, 2018, Defendants continued to ignore Plaintiff's request an accommodation of an additional three weeks of medical leave and failed to engage in any interactive process regarding this request for accommodation.

54.     The next day, on October 11, 2017, Plaintiff received unexpected Certified Mail from Korex dated October 5, 2017 advising that her health insurance benefits would end on October 13, 2017 when her FMLA leave ended and providing her with COBRA information.

55.     On October 11, 2017, Plaintiff transmitted a text message to Anderson and his friend, the HR Specialist, wherein she stated:  "I received my letter today, thank you both.  As you know I will be back on Nov. 6th.  My medical benefits end 10/31 as they go thru the end of the month.  If you feel the need to cancel my coverage for 5 days feel free and then you can fill out new paperwork to reinstate them on 11/6.  But my insurance starts back on 11/6.  Please let me know what you decide to do.  Thank you."

56.     Defendants did not respond to Plaintiff's October 11, 2018 text message.

57.     On October 25, 2017, Plaintiff received an unexpected Certified Mail from Korex dated October 18, 2017 stating:  "Thank you for your doctor's note stating you are off work until further notice.   Korex appreciates your hope to return to work on November 6.  According to the Company's Leave of Absence policy, an employee will be entitled to a maximum of 12 weeks of leave.   Your 12 weeks of leave ended on October 13, 2017.   This letter is to notice you that your employment with The Korex Corporation is terminated effective October 13, 2017.   Any Korex property in your possession, such as but limited to keys, must be returned immediately.   Also, keep us posted of any address changes so we can continue to mail your STD paycheck to your home, as well as your W-2 at year end.  We wish you well on a full recovery."

58.     On October 31, 2017, Plaintiff appeared at the Equal Employment Opportunity Commission to file a charge of discrimination, noting that Korex had previously granted medical leave extensions to male employees.

59.     On November 3, 2017, Plaintiff provided Defendants with a note from her cardiologist releasing her to return to work on November 6, 2017 without restrictions.

60.     On November 13, 2017, Defendants transmitted correspondence to Plaintiff acknowledging her medical clearance, advising that her "former position is no longer open, and making false allegations that overtures for a "future role" had allegedly been made to Plaintiff by Pensler.

61.     The younger HR Specialist hired by her friend, Anderson, was hired to permanently replace Plaintiff.

## COUNT I
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT
## <u>AGAINST DEFENDANT KOREX</u>

62.    Plaintiff repeats and realleges paragraphs 1-61.

63.    At all relevant times, Plaintiff was an individual with a disability within the meaning of the Americans With Disabilities Act, as amended, 42 USC §§12111, et seq. ('the ADA"). Specifically, Plaintiff has a physical or mental impairment that substantially limits one or more of her major life activities, has a record of the impairment, and/or is regarded by Defendants as having the impairment.

64.    Korex, through its employees, agents, and representatives, denied Plaintiff's request for reasonable accommodations.

65.    Korex, through its employees, agents, and representatives, failed to engage in the interactive process in good faith.

66.    During Plaintiff's employment at Korex, Korex, through its employees, agents, representatives, treated Plaintiff differently from similarly situated disabled and non-disabled employees in the terms and conditions of employment.

67.    The decision of Korex, through its employees, agents, and representatives, to terminate Plaintiff from her employment at Korex because, in part, of her disability constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the ADA.

68.    The decision of Korex, through its employees, agents, and representatives, to terminate Plaintiff from her employment at Korex because, in part, of her disability because she has a record of an impairment constitutes discrimination

against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the ADA.

69.   The decision of Korex, through its employees, agents, and representatives, to terminate Plaintiff from her employment at Korex because, in part, of her disability because they regarded Plaintiff as disabled constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the ADA.

70.   The actions of Korex and its employees, agents, and representatives were intentional in disregard to rights and sensibilities of Plaintiff.

71.   As a direct and proximate result of Korex's wrongful acts and omissions, through its employees, agents, and representatives, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT II
## SEX DISCRIMINATION
## IN VIOLATION OF TITLE VII
## AGAINST DEFENDANT KOREX

72.   Plaintiff repeats and realleges paragraphs 1-71.

73.   Plaintiff's sex was a factor that made a difference in Korex's decision, through its employees, agents, and representatives, to subject Plaintiff to the wrongful and discriminatory treatment described above, in violation of Title VII.

74.   Korex, through its employees, agents, and representatives, was predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

75.     Korex, through its employees, agents, and representatives, treated Plaintiff differently from similarly situated male employees in the terms and conditions of employment, based on unlawful consideration of sex.

76.     The actions of Korex, through its employees, agents, and representatives, were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

77.     If Plaintiff had been a male, she would not have been treated in the manner described.

78.     As a direct and proximate result of Korex's wrongful acts and omissions, through its employees, agents, and representatives, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT III
## HOSTILE ENVIRONMENT SEXUAL HARASSMENT
## IN VIOLATION OF TITLE VII

79.     Plaintiff repeats and realleges paragraphs 78.

80.     During the course of her employment with Defendants, Plaintiff and other female employees were subjected to unwelcome sexually hostile commentary and intimidation

81.     The unwelcome sexually hostile commentary and intimidation had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment for Plaintiff and other female employees.

82.     Defendants had both actual and constructive notice that Defendants' agents and employees created a hostile and offensive work environment for Plaintiff and other female employees.

83.     Despite having notice of the unwelcome conduct and intimidation, Defendants failed to remediate.

84.     Defendants' conduct violated Title VII.

85.     As a direct and proximate result of Korex's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT IV
## AGE DISCRIMINATION
## IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
## AGAINST DEFENDANT KOREX

86.     Plaintiff repeats and realleges paragraphs 1-85.

87.     At all material times, Plaintiff was an employee and Korex was her employer covered by and within the meaning of the Age Discrimination in Employment Act, 29 USC §621, et seq.

88.     While Plaintiff was employed by Korex, Korex, by and through its employees, agents, and representatives, subjected Plaintiff to age discrimination which included, but was not limited to,:

   a.     failing to provide a work environment free from age discrimination;

   b.     limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of her age;

13

     c.      discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment, because of age; and

     d.      replacing Plaintiff with a younger person.

89.    Korex, by and through its employees, agents, and representatives, treated Plaintiff differently from similarly situated younger employees in the terms and conditions of employment, based on unlawful consideration of age.

90.    The acts of Korex, through its employees, agents, and representatives, as described above, violated the Age Discrimination in Employment Act, 29 USC §621, et seq.

91.    Plaintiff's employment was terminated by Korex, through its employees, agents, and representatives, in whole or in part because of her age.

92.    Korex, through its employees, agents, and representatives, was predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

93.    The actions of Korex, through its employees, agents, and representatives, were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

94.    If Plaintiff had been younger, she would not have been treated in the manner described.

95.    As a direct and proximate result of Korex's wrongful acts and omissions, through its employees, agents, and representatives, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT V
## RETALIATION
## IN VIOLATION OF TITLE VII
## AGAINST DEFENDANT KOREX

96.    Plaintiff repeats and realleges paragraphs 1-95.

97.    Korex retaliated against Plaintiff, including but not limited to, denying her extended medical leave and terminating her employment, for having complained about Korex's discriminatory employment practices described above, in violation of Title VII.

98.    Korex's actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

99.    As a direct and proximate result of Korex's wrongful acts and omissions, through its employees, agents, and representatives, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT VI
## SEX DISCRIMINATION
## IN VIOLATION OF
## THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## AGAINST ALL DEFENDANTS

100.    Plaintiff repeats and realleges paragraphs 1-99.

101.    During Plaintiffs employment at Korex, Defendants, through their employees, agents, representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on unlawful consideration of sex.

102.    During Plaintiff's employment at Korex, Defendants, through their employees, agents, representatives, treated Plaintiff differently from similarly situated male employees in the terms and conditions of employment.

103.   Plaintiff was subjected to sex discrimination by Defendants, by and through their employees, agents, and representatives, said acts being made unlawful by the Elliott-Larsen Civil Rights Act.

104.   Defendants, by and through their employees, agents, and representatives, violated the Elliott-Larsen Civil Rights Act by the following acts:

a.   failing to provide a work environment free from sex discrimination;.

b.   limiting, segregating, or classifying Plaintiff and other female employees ways which deprived or tended to deprive Plaintiff and other female employees of employment opportunities or otherwise adversely affecting the status of Plaintiff and other female employees  because of their sex; and

c.   discharging or otherwise discriminating against Plaintiff with respect to her employment, compensation, or a term, condition or privilege of employment, because of, in part, her sex.

105.   Defendants, by and through their employees, agents, and representatives, were predisposed to discriminate on the basis of sex and acted in accordance with that predisposition.

106.   Defendants, by and through their employees, agents, and representatives, treated Plaintiff and other female employees differently from similarly situated male employees in the terms and conditions of employment, based on unlawful consideration of sex.

107.   Defendants' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

108.   If Plaintiff had been male, she would not have been treated in the manner described.

109.   As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT VII**
**HOSTILE ENVIRONMENT SEXUAL HARASSMENT**
**IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**

110.   Plaintiff repeats and realleges paragraphs 109.

111.   During the course of her employment with Defendants, Plaintiff and other female employees were subjected to unwelcome sexually hostile commentary and intimidation

112.   The unwelcome sexually hostile commentary and intimidation had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment for Plaintiff and other female employees.

113.   Defendants had both actual and constructive notice that Defendants' agents and employees created a hostile and offensive work environment for Plaintiff and other female employees.

114.   Despite having notice of the unwelcome conduct and intimidation, Defendants failed to remediate.

115.   Defendants' conduct violated the Elliott-Larsen Civil Rights Act.

116.   As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

### COUNT VIII
### AGE DISCRIMINATION
### IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
### AGAINST ALL DEFENDANTS

117.   Plaintiff repeats and realleges paragraphs 1-116.

118.   During Plaintiff's employment at Korex, Defendants through their employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment based on unlawful consideration of age.

119.   During Plaintiff's employment at Korex, Defendants treated Plaintiff differently from a similarly situated younger employee in the terms and conditions of employment.

120.   Plaintiff was subjected to age discrimination by Defendants, through their employees, agents, and representatives, said acts being made unlawful by the Elliott-Larsen Civil Rights Act.

121.   Defendants, by and through their agents, servants, and employees, violated the Elliott-Larsen Civil Rights Act by the following acts:

a.   failing to provide a work environment free from age discrimination;

b.   limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of her age;

c.   discharging or otherwise discriminating against Plaintiff with respect

to her employment, compensation, or a term, condition or privilege of employment, because of, in part, her age; and

        d.     replacing Plaintiff with a younger employee.

122.   Defendants were predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

123.   Defendants' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

124.   If Plaintiff had been younger, she would not have been treated in the manner described.

125.   As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT IX
### RETALIATION
### IN VIOLATION OF
### THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
### AGAINST ALL DEFENDANTS

126.   Plaintiff repeats and realleges paragraphs 1-125.

127.   During Plaintiff's employment, Plaintiff complained to Korex verbally and in writing about the sex discrimination and hostile work environment to which she and other female employees were subjected.

128.   Plaintiff was subjected to retaliation by Defendants in whole or in part because she complained of unlawful acts of discrimination and harassment in violation of the Elliott-Larsen Civil Rights Act.

129.   This retaliation occurred, in part, because Plaintiff engaged in protected activity pursuant to the Elliott-Larsen Civil Rights Act.

130.   Defendants' acts, as described above, violate the Elliott-Larsen Civil Rights Act.

131.   As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT X
## VIOLATIONS OF THE
## PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
## AGAINST ALL DEFENDANTS

132.   Plaintiff incorporates by reference paragraphs 1-131.

133.   At all relevant times, Plaintiff was an individual with a disability within the meaning of the Persons With Disabilities Civil Rights Act, MCL 37.1201 et seq. Specifically, Plaintiff has a physical or mental impairment that substantially limits one or more of her major life activities, has a record of the impairment, and/or is regarded by Defendants as having the impairment.

134.   Defendants denied Plaintiff's request for reasonable accommodations.

135.   Defendants' decision to terminate Plaintiff from her employment at Korex because, in part, of her disability constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act, MCL 37.1201 et seq.

136.   Defendants' decision to terminate Plaintiff from her employment at Korex because, in part, of her disability because she has a record of an impairment

constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act, MCL 37.1201 et seq.

137.    Defendants' decision to terminate Plaintiff from her employment at Korex because, in part, of her disability because they regarded Plaintiff as disabled constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act, MCL 37.1201 et seq.

138.    The actions of Defendants and their agents, representatives, and employees were intentional in disregard to rights and sensibilities of Plaintiff.

139.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT XI**
**INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP**
**AGAINST DEFENDANT JASON ANDERSON**

140.    Plaintiff repeats and realleges paragraphs 1-139.

141.    From 2002 to October 2017, Plaintiff enjoyed an advantageous business relationship and expectancy with Korex.

141.    The business relationship and expectancies between Plaintiff and Korex had a reasonable likelihood of future economic benefit to Plaintiff.

142   By his conduct described above, Anderson intentionally, wrongfully and improperly interfered with the advantageous business relationship and expectancy between Plaintiff and Korex.

143.   As a direct and proximate result of Anderson's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

### COUNT XII
### RETALIATORY DISCHARGE IN
### VIOLATION OF PUBLIC POLICY
### AGAINST ALL DEFENDANTS

144.   Plaintiff repeats and realleges paragraphs 1-143

145.   During the relevant time period, Plaintiff consistently refused Pensler's directives to her to violate the law, fabricate documents, and lie to MIOSHA, the City of Wixom, public officials, customers, employees and others about the safety conditions in the workplace, the status of Korex's business license, the disposal of toxic waste, product quality, and the discrimination and harassment complaints that she had brought to management's attention.

146.   Plaintiff objected to Defendants that she was being directed to violate state laws and public policies regarding the safety conditions in the workplace, the status of Korex's business license, the disposal of toxic waste, product quality, and the discrimination complaints that she had brought to management's attention.

147.   Plaintiff refused to obey Pensler's directives that she lie about the safety conditions in the workplace, the status of Korex's business license, the disposal of toxic

waste, product quality, and the discrimination complaints that she had brought to management's attention.

148.    Defendants terminated Plaintiff's employment in whole or in part in retaliation for objecting to and/or refusing to violate state and/or Federal laws and/or public policies.

149.    As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

WHEREFORE, Plaintiff DENISE FANNON prays that this Honorable Court grant the following remedies:

A.    Declare that the aforementioned practices and actions of Defendants constitute unlawful employment practices in violation of Americans With Disabilities Act of 1990, as amended, 42 USC §12111, et seq., Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e et seq., the Age in Discrimination in Employment Act of 1967, as amended, 29 USC §621, et seq., the Persons With Disabilities Civil Rights Act, MCL §37.1201 et seq., the Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq., and Michigan common law.

B.    Award Plaintiff all lost wages and the value of fringe benefits, past and future, to which she is entitled;

C.    Award Plaintiff compensatory damages;

D.    Award Plaintiff exemplary damages;

E.    Award Plaintiff punitive damages;

F.    Award Plaintiff reasonable attorney's fees, costs, and interest; and

G.    Award Plaintiff such other relief as this Court deems just and proper.

<u>s/Teresa J. Gorman</u>
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI 48098
Tel:  (248) 763-6943
Fax: (248) 689-3268
terigorman@aol.com

## JURY DEMAND

Plaintiff demands a jury trial.

<u>s/Teresa J. Gorman</u>
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI 48098
Tel:  (248) 763-6943
Fax: (248) 689-3268
terigorman@aol.com